649 A.2d 203

**CRAWFORD COUNTY CARE CENTER, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (DALY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 16, 1994.

Decided Oct. 24, 1994.

170

Richard E. Bordonaro, for petitioner.

Joan D. Mason, for respondent.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Crawford County Care Center (Employer) appeals from an opinion and order of the Workmen's Compensation Appeal Board (Board) affirming, with a minor modification, the decision of the referee to grant in part and deny in part Employer's petition to terminate, suspend or modify the workmen's compensation benefits awarded to Irene Daly (Claimant).

The facts establish that on November 7, 1986, Claimant suffered a work-related injury to her back and began receiving total disability benefits pursuant to a decision of the referee dated April 26, 1991. Employer filed a petition for termination, suspension or modification on September 5, 1991, alleging that Claimant had returned to work on August 21, 1991 and that Employer had taken an automatic supersedeas pursuant to Section 413(c) of The Pennsylvania Workmen's Compensation Act (Act).[1]

The referee found that Claimant did return to a modified duty job with Employer, with no loss of earnings, but she only worked this job for three consecutive days when her total

1. The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 774.2.

disability recurred due to the bending requirements and the duration and frequency of her shifts. Although Claimant did not orally report to her superiors that she was again experiencing back problems, she consistently recorded this fact, in writing, at the end of each shift. Although Employer received these duty logs each day from Claimant, none of Claimant's superiors attempted to contact her regarding further job modifications. The referee found that this short return to work caused a worsening in the residuals from her work-related injury.

By September 25, 1991, Claimant's residual pain from her work-related injury had subsided to the extent that she was again able to resume work in a modified duty position for four (4) hours per day. By April 27, 1992, when Claimant's doctor, Dr. Petrella, was deposed [2], she had been made aware that her Employer had modified duty work available for her within her doctor's restrictions, although she was not able to resume her time-of-injury job.

Because Employer knew that Claimant was no longer working at the time it filed its petition to terminate and took an automatic supersedeas, the referee concluded that Employer violated Section 413(c) of the Act and assessed a penalty of 10% on the weekly benefits which should have been paid from August 24, 1991 through January 17, 1992, when the referee granted a supersedeas.

The referee expressly noted that he found the Claimant and Claimant's doctor, Dr. Petrella credible, and expressly rejected the testimony of the independent medical examiner, Dr. Bohatiuk, as not credible or worthy of belief. He ordered the payment of total disability benefits from the period of April 24, 1991 to April 27, 1992, and ordered them suspended from August 21 through August 23, 1991, the period of three days when Claimant was at work. The referee also ordered that weekly benefits were to be modified to partial benefits beginning April 27, 1992. The Board affirmed this order.

2. The referee originally stated that the date of Dr. Petrella's deposition was April 17, 1992. However, the Board held that this was a typographical error and modified the referee's decision accordingly.

On appeal, Employer argues that the referee erred by ignoring the only credible evidence offered on the question of whether Claimant had fully recovered from her work injury, the testimony provided by Dr. Bohatiuk. Dr. Bohatiuk testified that Claimant's continuing difficulties were not caused by her work injury, but by a pre-existing condition, osteoporosis of the back. Employer also states that the evidence offered by Claimant's doctor, Dr. Petrella, was inconsistent and contradictory, and therefore not worthy of belief. We disagree.

Initially, we note that the ultimate fact-finder in a workmen's compensation case is the referee who has the sole prerogative of assessing credibility and resolving conflicts. The referee may accept or reject, in whole or in part, the testimony of any witness. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan),* 531 Pa. 287, 612 A.2d 434 (1992). Furthermore, it is now fundamental to workmen's compensation law that it is solely within the referee's discretion to find facts, and, if the facts as found by the referee rest on competent evidence, we may not disturb them. *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board,* 9 Pa.Commonwealth Ct. 176, 305 A.2d 757 (1973).

We do not find inconsistencies in Dr. Petrella's testimony. He testified that Claimant sustained an injury to the middle of her back which consisted of several compression fractures. He also consistently testified that she had not fully recovered from that injury and suffered residual pain due to the injury and to changes to the back caused by osteoporosis. A careful reading of the record shows that Dr. Petrella's testimony is not inconsistent; rather, he testified that pain is often referred to other parts of the back and that it is difficult to pin it down to an exact section. Moreover, he recognized that her pain may have derived from more than one source, but that one of the sources was her work-related back injury, which still has not fully resolved.

As has been stated many times, our scope of review is limited to determining whether there is substantial evidence in

the record to support the referee's findings of fact, whether an error of law has been committed, or whether constitutional rights have been violated. 2 Pa.C.S. § 704. Here, there was substantial evidence in the record to support the referee's finding that Claimant did not fully recover from her work injury, and that at no material time was she capable of resuming her time-of-injury job. We therefore find no merit to this argument.

■ Next, Employer claims that the referee and the Board ignored competent credible evidence that work within Claimant's physical and vocational capabilities had been made available to her as of August 24, 1991, or, at the latest, as of September 25, 1991. Employer argues that because she had been offered this work which fit the occupational category for which claimant had been given medical clearance, but did not accept this work, her benefits should have been modified pursuant to *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). Again we must disagree.

There is substantial credible evidence of record supporting the referee's finding that Claimant did not learn that she had been medically released to return to work, and that there was modified duty actually available to her where she would work sixteen (16) hours per week, until Dr. Petrella was deposed on April 27, 1991. (Finding of Fact 3(i).) Although, she knew as of the hearings held on January 16, 1992, and April 2, 1992, that Employer was willing to provide modified work for her, her medical restrictions were not sufficiently defined until her doctor was deposed. Moreover, apart from blanket statements made at the hearings that Employer would do whatever was necessary to modify the job, no written or oral offer was made to Claimant between August 24, 1991 and the January and April hearings.

Therefore, we hold that there was sufficient competent evidence of record that Claimant was first notified that there was a job available for her, within sufficiently specific medical

limitations, as of April 27, 1992, and, therefore, the referee's modification of benefits as of that date was entirely proper.

■ Finally, Employer argues that the Board erred in affirming the referee's imposition of a penalty for taking an automatic supersedeas. The referee stated:

> The defendants [Employer] violated Section 413(c) of the Act by taking an automatic supersedeas after the time period when the claimant had returned to work; and they remained in violation from August 24, 1991 through January 17, 1992, when the Referee's Interlocutory Order was entered granting them a supersedeas. (Conclusion of Law, No. 10.)

On appeal, Employer argued to the Board that a penalty should not have been imposed because there had been no violation of Section 413(c) of the Act. Section 413(c) provides:

> Notwithstanding any provision of this act, an employer may suspend the compensation *during* the time the employe has returned to work at his prior or increased earnings if the employer files a petition to terminate or modify a notice of compensation payable or a compensation agreement or award within fifteen days of the return to work. (Emphasis added.)

Employer argues that Claimant *had* returned to work at her original pay, and the petition was filed within fifteen (15) days thereafter. The Board responded:

> Since the automatic supersedeas authorized by Section 413 has been declared unconstitutional in the holding of *Baksalary v. Smith,* 579 F.Supp. 218 (1984), we hold the defendants' reliance upon that section to affect a unilateral suspension of benefits is, as a matter of law, a violation of the Act. (Board Opinion at 5.)

On appeal to this Court, Employer argues that the Board's reliance on *Baksalary* was erroneous, because the scope of the Eastern District's decision was limited to finding Section 413(a), not Section 413(c), unconstitutional. We disagree.

In *Baksalary* the court was concerned with the automatic supersedeas which typically occurred in two types of cases:

> Thus, in two sorts of cases an employee receiving benefits can have his benefits terminated pending disposition of his employer's or his employers' insurer's petition to terminate or modify those benefits. The first sort of case is one *where the petition alleges that the employee has returned to work at the same or higher wages.* The second sort of case is one where the petition alleges that the employee has fully recovered....

> [In both cases], [t]he employee has no avenue to contest application of the automatic supersedeas other than his defense on the merits of the petition before the referee. Referees typically take one year or more to decide contested cases.

*Baksalary,* 579 F.Supp. at 221 (emphasis added). The *Baksalary* court concluded that because under Section 413's automatic supersedeas there was no effective process available for a claimant to contest the employer's petition to terminate or modify benefits prior to such termination or modification, Section 413 did not afford due process and was unconstitutional.

Like the *Baksalary* court, this Court has held that it is not the policy of the Court to endorse an employer's unilateral decision to cease paying a claimant's benefits without a written agreement or official order. Such action is an unauthorized supersedeas for which penalties may be imposed. *Arnott v. Workmen's Compensation Appeal Board (Sheehy Ford Sales, Inc.),* 156 Pa.Commonwealth Ct. 167, 627 A.2d 808 (1993), *appeal denied,* 537 Pa. 624, 641 A.2d 589 (1994).

Here, Employer unilaterally terminated Claimant's benefits for a period of almost six months without written agreement or official order. This Court has traditionally held that when the record indicates that an employer has violated the Act by unilaterally suspending benefits, the imposition of a penalty is left to the discretion of the referee. *Id.; Ortiz v. Workmen's Compensation Appeal Board (Fair Tex Mills, Inc.),* 102 Pa.Commonwealth Ct. 493, 518 A.2d 1305 (1986).

Therefore, Employer's unilateral suspension of benefits was in violation of Claimant's rights under *Baksalary*, and the imposition of a penalty for violation of the act was proper and well within the discretion of the referee.[3] Accordingly, we affirm the order of the Board upholding the referee's decision in all respects.

## ORDER

AND NOW, this 24th day of October, 1994, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

---

3. Because we have affirmed the Board's decision on the basis of *Baksalary*, we have not found it necessary to discuss the referee's reasoning for imposing a penalty. However, even under this reasoning and if section 413(c) were, as Employer argues, constitutional, we hold that the unilateral termination of benefits by Employer was improper. Under section 413(c), an employer may suspend compensation *during* the time the employee has returned to work at his prior increased earnings. Here, Employer filed a petition and suspended Claimant's compensation after her three day return to work, during the time she was no longer working. The referee found that Employer was obviously aware Claimant was not working, and therefore, even under the terms of this section, Employer's use of section 413(c)'s automatic supersedeas power was improper.