# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Sealey,               :

         Petitioner     :

                         :

         v.               :    No. 1524 C.D. 2019

                         :    Submitted: March 13, 2020

Workers' Compensation Appeal Board   :

(Elwyn Inc.),               :

         Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED: September 29, 2020**

Charles Sealey (Claimant) petitions for review of an Order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) Decision, granting a Suspension Petition filed by Elwyn Inc. (Employer) and denying Claimant's Review Petition.[1] The WCJ found that while Claimant was not capable of performing various positions that Employer offered in writing to him, Claimant was capable of performing a job shredding paper for Employer, about which Employer's witness testified. The WCJ also found Claimant did not meet his burden to amend his accepted work injury to include additional

---

[1] The WCJ's Decision also denied a Termination Petition filed by Employer, which Employer did not appeal. Therefore, as it is not before us, we limit our discussion of the Termination Petition to the extent possible.

injuries. Upon review, we affirm the Board with respect to the Review Petition, but reverse with respect to the Suspension Petition as there is not substantial evidence to support the offer of a job to Claimant within his restrictions.

## I.    BACKGROUND

On May 20, 2017, during the course and scope of his employment with Employer, Claimant suffered a lower back strain while repositioning a client. A Notice of Temporary Compensation Payable, which converted by operation of law, was issued describing the injury as a sprain or tear to the lower back area. In October 2017, Employer filed a Termination Petition alleging full recovery. In December 2017, Employer filed its first Suspension Petition alleging that it offered Claimant a specific job that Claimant was capable of performing but refused, and as a result, Claimant's benefits should be suspended as of December 6, 2017. Three months later, Employer filed a second Suspension Petition alleging Claimant refused a specific job offer he was capable of performing, and therefore, Claimant's benefits should be suspended as of March 12, 2018. Thereafter, Claimant filed a Review Petition seeking to amend the injury to include "aggravation of lumbar stenosis, aggravation of lumbar degenerative disc disease and lumbar radiculopathy." (WCJ Decision, Finding of Fact (FOF) ¶ 5; Reproduced Record (R.R.) at 8a.[2])

The various petitions were assigned to a WCJ for disposition. In support of its petitions, Employer presented the deposition testimony of Donald Leatherwood, M.D., who testified as follows. Dr. Leatherwood is a board-certified orthopedic

---

[2] Although Rule 2173 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2173, requires the reproduced record to be numbered in Arabic figures followed by a small "a," the Reproduced Record here only utilizes Arabic figures. We cite to the Reproduced Record in the proper format.

surgeon who conducted an independent medical examination (IME) of Claimant on September 26, 2017. In addition to the physical examination of Claimant, Dr. Leatherwood reviewed two magnetic resonance imagings (MRI) that Claimant underwent, one in 2015 and the other in 2017. According to Dr. Leatherwood, neither MRI showed trauma, but both showed degenerative changes. Based upon his examination and review of Claimant's medical records, Dr. Leatherwood opined that Claimant "sustained a lumbosacral sprain and strain superimposed by underlying degenerative disc disease." (R.R. at 91a.) The degenerative changes were not attributable to Claimant's employment or aggravated by the work injury. According to Dr. Leatherwood, Claimant was fully recovered from the accepted work injury as of the date of his IME and was able to return to work without restrictions. Dr. Leatherwood reviewed a job offer packet Employer sent Claimant related to a position for residential living staff (RLS), which based upon his review of a job description, Dr. Leatherwood thought Claimant was capable of performing without restrictions. (Leatherwood Dep. Tr. at 19-20, Certified Record (C.R.) Item 29.[3])

Marie Johnson, Employer's Director of Risk Management (Risk Management Director), testified via deposition as follows. Upon receipt of Dr. Leatherwood's report, Risk Management Director reviewed and matched Claimant to available positions. Three jobs in RLS, which was the same position as Claimant's preinjury position, were offered to Claimant. The three positions were at different locations on Employer's main campus and all paid the same as Claimant's preinjury wage. Claimant did not return to work, nor did Claimant contact Employer to discuss returning to work in any other capacity.

---

[3] Certain pages of the transcript were omitted from the Reproduced Record. Accordingly, in those instances, we cite to the page of the transcript in the Certified Record.

At the time of her deposition on March 6, 2018, Risk Management Director testified there were three positions currently open that she felt Claimant was capable of performing. Two of the positions were as an instructor at Employer's sheltered workshop, where clients of Employer with disabilities would work separating x-rays from their jacket or envelope for recycling. The instructor would be responsible for overseeing the clients and could sit, stand, and walk around as needed. The other position was as a production coordinator, which was also in the sheltered workshop. This position was "less hands-on with the client" than the instructor position, but still involved helping clients with their projects. (R.R. at 144a.) Risk Management Director acknowledged these positions might need to assist with lifting clients on and off toilets or changing their diapers. Risk Management Director testified that Employer has placed other injured workers in the training instructor and production coordinator positions before. Claimant's counsel interrupted questioning of Risk Management Director and asked whether Employer would provide a formal written offer of these positions, to which Employer's counsel responded that it was not required to provide such offers but would do so. Risk Management Director further testified that after his work injury, Claimant worked a light-duty clerical job for Employer. Specifically, Risk Management Director stated Claimant shredded paper for the Risk Management Department on June 6 and 12, 2017. According to Risk Management Director, Claimant could use either hand, sit or stand, and take breaks as needed in this position. He could also lift one sheet at a time, and there was no work quota. The shredding work was still available, Risk Management Director testified, and other injured workers perform that work "almost every day." (*Id.* at 152a.) Risk Management Director stated Employer can make accommodations for an individual's restrictions, which Employer is "pretty good" at doing because it

4

works with people with disabilities as a business. (*Id.*) However, Claimant never requested any accommodations and chose to work only those two days shredding paper.

Upon cross-examination, Claimant's counsel confirmed that Risk Management Director was going to send a formal written offer of the positions to which she testified on direct examination. Risk Management Director confirmed she would send a "follow-up letter confirming the job offers from today." (*Id.* at 155a.) Claimant's counsel then asked Risk Management Director, "So what jobs are you going to send a letter offering him a job for?", to which Risk Management Director responded: "I will offer him an instructor position in the Wilmington location and a . . . production coordinator position in the Wilmington office." (*Id.* at 155a.) Counsel then questioned Risk Management Director further about the requirements of those two positions, during which time Claimant's counsel asked the witness why Claimant was not sent a written job offer prior to the deposition. Risk Management Director explained that Claimant had been worried about the commute and she knew Employer had openings in Wilmington. (*Id.* at 160a-62a.) Risk Management Director further acknowledged that she could have sent a letter, similar to the one she sent in November 2017. (*Id.* at 161a.) At the conclusion of the cross-examination of Risk Management Director, which focused solely on the instructor and production coordinator positions, Claimant's counsel stated he "[n]ow feel[s] like [he] ha[s] enough information . . . to communicate these offers directly to [Claimant]" and asked Risk Management Director whether "there [we]re any other jobs that [she] wanted to offer [Claimant] for the first time today." (*Id.* at 164a.) Employer's counsel objected to the form of the question before Risk

5

Management Director responded, "No, not at this time." (*Id.*) Employer's counsel asked no questions on redirect examination.

A copy of a letter dated March 6, 2018, from Risk Management Director to Claimant was introduced as evidence in the proceedings before the WCJ. The letter stated, based on Dr. Leatherwood's Notice of Ability to Return to Work, Employer was "excited to offer [Claimant] two positions, Training Instructor and Production Coordinator. . . . Please advise by 3/21/18 which position you will accept." (*Id.* at 179a.) The letter then detailed the location and shifts for both of the positions and indicated both pay Claimant's preinjury average weekly wage. The letter did not offer the shredding position. Also introduced into evidence was a copy of a November 22, 2017 letter from Risk Management Director to Claimant offering him one of three positions in RLS. (*Id.* at 68a.) In addition, a copy of the Notice of Ability to Return to Work dated October 6, 2017, was introduced. (*Id.* at 65a.)

Claimant testified via deposition and live before the WCJ. At his January 9, 2018 deposition, Claimant testified, in relevant part, as follows. After his May 20, 2017 work injury, he returned to work for Employer two days, June 6, 2017, and September 13, 2017. He received a letter from Employer offering him a position as RLS counselor in one of three locations, but he did not contact Employer about the positions. Claimant does not believe he is capable of performing his preinjury position because of the physical requirements involved. Claimant does not believe he is capable of performing any work. Claimant testified he could not copy, scan, or shred documents because he cannot sit in a chair. He does not think he could work even if he was able to switch physical positions.

Claimant testified live before the WCJ at a hearing on April 23, 2018, in relevant part, as follows. Claimant described the ongoing pain he experiences and

6

continues to believe he is not capable of returning to his preinjury position. (*Id*. at 211a.) Claimant also does not believe he can perform the jobs offered to him by Employer in the second offer letter because of the lifting requirements associated with each. On cross-examination, Claimant admitted he has not looked for work or discussed with Employer work activities he believes he is capable of performing. He reiterated that he does not think he can work in any capacity. Claimant was asked whether he could work if he was permitted to alternate between sitting and standing and responded:

> I would say, you know, if it was something that I could sit down and not really do anything, maybe so. You know, not a whole lot because of my lower back and from the pain that is shooting down to the bottom of my feet all the time. I mean, it would be difficult, but I would try.

(April 23, 2018 Hr'g Tr. at 16, C.R. Item 21.)

In support of his Review Petition, Claimant presented the deposition testimony of Kim-Huong Thi Nguyen, D.O., who is board certified in family practice. Dr. Nguyen first saw Claimant for the work injury on August 7, 2017,[4] and referred him for an MRI. Dr. Nguyen reviewed the radiologist's report, which showed mild to moderate spondylosis that Dr. Nguyen described as a degenerative disease of the lower back. According to Dr. Nguyen, the report also "show[ed] congenital narrowing of the spinal canal and multi-level stenosis," "marked severe stenosis" in the L3-4 region, as well as "a small disc protrusion with possible compression of the traversing L-4 nerve root" at L3-4. (R.R. at 185a-86a.) Dr. Nguyen provided Claimant a note excusing him from work on September 14, 2017, based upon Claimant's work-related injury. At a follow-up examination a month later, Dr. Nguyen prescribed Claimant pain medication. Dr. Nguyen continued

---

[4] Dr. Nguyen has been Claimant's family doctor since April 2016.

7

treating Claimant over the course of the next several months. At a March 2018 visit, Dr. Nguyen reviewed an electromyography (EMG) Claimant underwent, which, according to Dr. Nguyen, was "an abnormal study on the right L4-5 and on the left, L-5 ha[d] radiculopathy," both of which were consistent in Dr. Nguyen's opinion with Claimant's subjective complaints and Dr. Nguyen's physical exams. (*Id.* at 188a.) At this visit, Dr. Nguyen also reviewed an offer letter Claimant received from Employer and the accompanying job descriptions. Dr. Nguyen was of the opinion that Claimant could not perform these jobs because of his work-related injury. Dr. Nguyen additionally reviewed the deposition of Risk Management Director and opined that Claimant could not perform either the work of the training instructor or production coordinator positions that were subsequently offered by Employer. In addition to the lumbar strain/sprain, Dr. Nguyen diagnosed Claimant as suffering from lumbar radiculopathy and an aggravation of his preexisting degenerative disc disease and lumbar stenosis of his lower back. It was Dr. Nguyen's opinion that these resulted from Claimant's work injury and prevented him from returning to his preinjury position.

On cross-examination, Dr. Nguyen was asked to compare the results of MRIs performed in 2015 and 2017. Dr. Nguyen opined the 2017 MRI was less severe or better than the 2015 MRI. (*Id.* at 194a.) When asked whether Claimant could be gainfully employed, Dr. Nguyen responded, "[i]f it didn't involve heavy lifting, bending, I believe he could." (*Id.* at 195a.) Dr. Nguyen also believed Claimant could work if he alternated between sitting and standing, had to lift a single sheet of paper, or had to shred or scan documents. (*Id.*)

Based upon the evidence presented, the WCJ issued a Decision denying Employer's Termination Petition and Claimant's Review Petition, and granting

8

Employer's Suspension Petition effective March 6, 2018. In reaching this Decision, the WCJ credited Claimant's testimony with regard to injuring his back and about his treatment of same. The WCJ did not credit Claimant to the extent he alleged the work injury caused an aggravation of his lumbar stenosis, an aggravation of his lumbar degenerative disc disease, or lumbar radiculopathy. The WCJ reasoned that the MRIs did not show any change as a result of the work injury. (FOF ¶ 25.)

The WCJ further found that, based upon the testimony of Dr. Nguyen, Claimant could return to work. The WCJ credited Claimant's testimony that he could not lift or transfer a client or perform CPR but discredited Claimant's testimony that he could not shred documents. The WCJ stated he was "giv[ing] Claimant the benefit of the doubt that he might have some ongoing low back complaints," but they "are not as severe as he portrays." (*Id.* ¶ 26.) The WCJ found Risk Management Director's testimony "generally credible and persuasive." (*Id.* ¶ 27.) The WCJ found Claimant's preinjury job in RLS and the training instructor and production coordinator positions "might be beyond Claimant's capabilities," but determined the job shredding documents, which Claimant performed for two days in June 2017, was within Claimant's vocational and physical capabilities, available to him, and would have paid him his preinjury wage. (*Id.*) The WCJ further found Claimant did not respond or make a good faith effort to return to that position or make any attempt to return to work or seek accommodations. (*Id.*)

The WCJ similarly found Dr. Leatherwood's testimony "generally credible and persuasive." (*Id.* ¶ 29.) Specifically, the WCJ found Dr. Leatherwood "carefully reviewed the MRI films and explained them in great detail" when testifying Claimant did not suffer any additional injuries as a result of the work injury. As for Dr. Leatherwood's testimony that Claimant was fully recovered, the WCJ stated

9

Claimant was being given "the benefit of the doubt" "on this issue." (*Id.*) The WCJ again noted that, while Claimant probably could not perform some of the functions of the RLS, training instructor, or production coordinator positions, Dr. Leatherwood's testimony did support that Claimant could sort and shred paper.

With respect to Dr. Nguyen's testimony, the WCJ credited her testimony about Claimant's back pain and that Claimant's degenerative disc disease after the work injury was similar to before the injury. In addition, the WCJ credited Dr. Nguyen's testimony that Claimant could return to light-duty or sedentary work, such as shredding paper, provided Claimant could alternate physical positions. The WCJ rejected Dr. Nguyen's testimony that Claimant suffered additional injuries, noting the MRI studies do not support this testimony. Thus, the WCJ found no evidence that the work injury aggravated any of Claimant's preexisting back conditions.

Accordingly, based upon the evidence, the WCJ found Claimant suffered a sprain to his lower back on May 20, 2017, but no other injuries. The WCJ further found Claimant was capable of performing the shredding job that was offered to him as of March 6, 2018, but Claimant did not exercise good faith in contacting Employer, trying to perform the position, or seeking alternative employment.

Claimant appealed to the Board, which affirmed. In doing so, it rejected Claimant's argument that the WCJ's finding Dr. Nguyen's testimony not credible was not based upon substantial evidence. The Board explained the WCJ, as the factfinder, was free to accept or reject testimony, and here, the WCJ rejected Dr. Nguyen's testimony with regard to the MRIs in favor of Dr. Leatherwood's testimony based upon Dr. Leatherwood's review of the actual films, which he described in detail. (Board Opinion (Op.) at 4-5.) As for Claimant's arguments that his testimony supports Dr. Nguyen's diagnosis of lumbar radiculopathy and that the

10

WCJ did not adequately address the 2018 EMG, the Board stated Claimant was "disput[ing] the credibility determinations, which are left to the WCJ," and discerned no error. (*Id.* at 5.)

The Board likewise rejected Claimant's argument that the WCJ erred by granting the Suspension Petition based upon a job offer that Claimant argued was insufficient. The Board reasoned that an employer must give notice of a general job classification and description such that the claimant is reasonably apprised of the duties. (*Id.* at 6.) According to the Board, Risk Management Director did this through her testimony. (*Id.* at 8-9.) Furthermore, the Board noted that Claimant's own physician, Dr. Nguyen, testified Claimant could return to work provided it did not involve heavy lifting or bending and he could change positions as needed, such as with the shredding position. (*Id.* at 9.) Therefore, Claimant had an obligation to respond and did not; thus, the Board concluded the WCJ properly suspended Claimant's benefits. (*Id.* at 9.)

Claimant now petitions for review of the Board's Order.

## II.   PARTIES' ARGUMENTS

On appeal,[5] Claimant challenges both the grant of the Suspension Petition and the denial of his Review Petition. With regard to the Suspension Petition, Claimant argues the WCJ erred in suspending his benefits because there is not substantial evidence to support the WCJ's finding that Employer offered Claimant the shredding position. According to Claimant, Risk Management Director testified she would, and ultimately did, send a letter offering the training instructor and production

---

[5] Our review is limited to determining whether constitutional rights were violated, errors of law were committed, or "necessary findings of fact are supported by substantial evidence." *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 331 n.2 (Pa. 2000).

11

coordinator positions but she only "casually testified" that Employer already had a paper shredder position open for injured workers. (Claimant's Brief (Br.) at 14.) Claimant asserts the WCJ found Claimant was not capable of performing the training instructor and production coordinator jobs that were actually offered, but found Claimant could shred paper. Because there is no evidence that Employer offered the shredder position to Claimant, Employer did not meet its burden and the shredder position cannot form the basis of Claimant's suspension. Citing *Hill v. Workers' Compensation Appeal Board (Ballard, Spahr, Andrews & Ingersoll)*, 824 A.2d 358 (Pa. Cmwlth. 2003), Claimant contends that general references to an alternate position, without descriptive information about the position, is insufficient.

With regard to the Review Petition, Claimant argues the WCJ's Decision is not supported by substantial evidence. Claimant argues the WCJ erred in relying on Dr. Leatherwood's opinion because he did not review a 2018 EMG, which showed radiculopathy. Further, Claimant asserts, Dr. Leatherwood was wrong in his opinion that the post-injury MRI was somewhat better than the preinjury MRI. Claimant argues that "[s]ince the [WCJ]'s credibility findings in this regard do[] not permit adequate review by the appellate courts, they are not well reasoned." (Claimant's Br. at 18.) Accordingly, Claimant asks the Court to reverse the Board's Order.

Employer responds that it met its burden in relation to the Suspension Petition because it showed Claimant recovered enough to return to work and provided evidence of an open position that was within Claimant's medical restrictions. According to Employer, it was Claimant who did not show he acted in good faith by following through on the offer. Employer asserts it submitted the deposition testimony of Risk Management Director, who testified as to the available positions, which included the paper shredding position within her department. Employer

12

denies that there is an obligation that job offers be in writing. Employer further asserts there was no obligation to provide more detailed information about the paper shredding position because Claimant previously worked in that capacity. Employer also points out that Claimant's own physician, Dr. Nguyen, testified that Claimant was able to perform the duties of that position. Employer argues Claimant did not follow through on the offer because he did not believe he could work in any capacity, which the WCJ rejected.

Finally, as to the Review Petition, Employer responds that there is sufficient evidence to support its denial, namely Dr. Leatherwood's testimony, which the WCJ credited over Dr. Nguyen's. Further, Employer asserts the WCJ adequately explained her reasoning for accepting Dr. Leatherwood's testimony over Dr. Nguyen's. To the extent Claimant asserts Dr. Leatherwood's testimony was not competent because Dr. Leatherwood did not review the EMG, Employer argues that goes to the weight of the evidence, not competency, and like credibility, weight of the evidence is within the exclusive purview of the WCJ. Regardless, Employer asserts Claimant could not prevail because he bore the burden of proof on the Review Petition and the WCJ rejected Dr. Nguyen's testimony that Claimant suffered more than a sprain. Thus, Claimant could not satisfy this burden. Furthermore, Claimant's challenge as to the WCJ's finding that the post-injury MRI being "somewhat better" than the preinjury MRI, (FOF ¶ 23), is "flat out wrong," Employer contends. (Employer's Br. at 27). According to Employer, the finding in question relates to Dr. Nguyen's testimony on cross-examination, not Dr. Leatherwood's testimony. Employer asks the Court to affirm the Board's Order.

13

## III. DISCUSSION

*A.     Whether there is substantial evidence to support a finding that Employer offered Claimant the paper shredding position.*

We begin with the WCJ's grant of Employer's Suspension Petition on the basis that Employer offered Claimant a position shredding paper, which was within Claimant's job restrictions, but upon which Claimant did not act in good faith and follow through with Employer.   In order to be entitled to the suspension of a claimant's workers' compensation benefits, an employer bears the initial burden of producing medical evidence to support a change in condition and "evidence of a referral (or referrals) to a then open job (or jobs), which fits the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc." *Dixon v. Workers' Comp. Appeal Bd. (Medrad, Inc.)*, 134 A.3d 518, 522 (Pa. Cmwlth. 2016) (quoting *Kachinski v. Workmen's Comp. Appeal Bd. (Vepco Constr. Co.)*, 532 A.2d 374, 380 (Pa. 1987)[6]).   The burden then shifts to the claimant to show he or she acted in good faith in following through on the job offer. *Id.*

At issue here is whether there is substantial evidence to support the WCJ's finding that Employer offered Claimant the paper shredding position that the WCJ relied upon to suspend Claimant's benefits.   Substantial evidence is defined as "relevant evidence that a 'reasonable person might accept as adequate to support a conclusion.'"   *Pocono Mountain Sch. Dist. v. Workers' Comp. Appeal Bd. (Easterling)*, 113 A.3d 909, 918 (Pa. Cmwlth. 2015) (quoting *Wieczorkowski v. Workers' Comp. Appeal Bd. (LTV Steel),* 871 A.2d 884, 890 (Pa. Cmwlth. 2005)).

---

[6] Although *Kachinski* was superseded in part by an amendment to Section 306(b) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512, the Court continues to apply it in cases where the employer's suspension or modification petition is based upon its own offer of a specific job. *South Hills Health Sys. v. Workers' Comp. Appeal Bd. (Kiefer)*, 806 A.2d 962, 968 (Pa. Cmwlth. 2002).

14

Here, Employer made several written job offers to Claimant, including positions as RLS, training instructor, and production coordinator, all of which the WCJ found were **not** within Claimant's capabilities. The paper shredder position that the WCJ ultimately found was offered to Claimant and was within Claimant's capabilities was based on testimony of Risk Management Director at her deposition. This Court has held that an employer's job offer need not be in writing, but may be made orally. *See, e.g.*, *Nahas v. Workers' Comp. Appeal Bd. (Synergistic Partners, Inc.)* (Pa. Cmwlth., No. 726 C.D. 2017, filed July 26, 2018), slip op. at 8 (holding human resource coordinator's testimony established a job offer); *Devlin Elec., Inc. v. Workers' Comp. Appeal Bd. (Shurina)* (Pa. Cmwlth., No. 837 C.D. 2013, filed Sept. 24, 2014), slip op. at 20 (holding a job offer may be made through testimony of an employer's witness).[7] Unlike in *Nahas*, however, where the human resources coordinator testified that a sedentary position was available for the claimant **and the employer was offering this position to the claimant**, slip op. at 3-4, here Risk Management Director testified only generally about the paper shredding position and its requirements. This general testimony was akin to the "blanket statements" the employer's witness made in *Crawford County Care Center v. Workmen's Compensation Appeal Board (Daly)*, 649 A.2d 203, 206 (Pa. Cmwlth. 1994). In that case, because no written or oral job offer was made, the Court held the "blanket statements" that it would accommodate the claimant's restrictions were insufficient. *Id.* Here, after testifying about the training instructor and production coordinator positions, Risk Management Director testified that Claimant previously performed

---

[7] Unreported panel decisions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b)(1) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b)(1), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

15

light-duty work shredding paper for Employer for two days and such work was still available. (R.R. at 150a-53a.) She explained the work could be performed using either hand, and Claimant could lift as little as one sheet at a time. (*Id.* at 151a-52a.) She further testified that the work could be performed sitting or standing, and Claimant could take breaks as needed. (*Id.* at 151a.) Importantly, though, Risk Management Director did not specifically offer the position to Claimant. On cross-examination when Claimant's counsel renewed a request he made during direct examination to have Employer follow up with a formal written offer that he could present to his client, Risk Management Director only identified the training instructor and production coordinator positions as offers. (*Id.* at 155a.) When directly asked what jobs Employer was going to offer, Risk Management Director responded: "I will offer him an instructor position in the Wilmington location and a . . . production coordinator position in the Wilmington office." (*Id.*) After questioning Risk Management Director further about the requirements of those two positions that Risk Management Director identified, Claimant's counsel concluded the deposition by asking Risk Management Director whether there were any other jobs she wanted to offer Claimant "for the first time," to which Risk Management Director responded, "No, not at this time."

Subsequent to her deposition, Risk Management Director sent Claimant a letter stating Employer was "excited to offer [Claimant] two positions, Training Instructor and Production Coordinator," and instructing Claimant "Please advise by 3/21/18 which position you will accept." (*Id.* at 179a.) The offer clearly gave Claimant a choice between **one of two** positions, the training instructor and production coordinator position, and instructed that Claimant was to accept **one of those positions** by the date specified. The letter did not offer the position shredding

16

paper to which Risk Management Director testified as one of the positions Claimant could accept. Given this, we cannot say "a 'reasonable person [would] accept [Risk Management Director's testimony] as adequate to support [the] conclusion'" that Employer offered Claimant a job shredding paper in the Risk Management Department. *Pocono Mountain Sch. Dist.*, 113 A.3d at 918 (quoting *Wieczorkowski*, 871 A.2d at 890). Although Claimant's counsel's final question to Risk Management Director asked whether there were any other jobs she wanted to offer Claimant "for the first time," (*id.*), and Claimant previously worked in the paper shredding position, this work was performed more than a year prior for just two days. Moreover, this question followed lengthy questioning by Claimant's counsel about the jobs Risk Management Director herself identified as the ones she was offering Claimant – the instructor and production coordinator positions – when she was asked point blank at the beginning of cross-examination what positions Employer was offering Claimant. The subsequent offer letter clarified that it was the two positions, the training instructor and production coordinator positions, that were offered to Claimant for his return to work and he was to choose one of them. In short, there was no offer of the paper shredding position. Absent an offer, there could be no acceptance by Claimant.

In summary, when Risk Management Director's testimony is viewed as a whole and in the context of a subsequent written offer letter that did not include any mention of the paper shredding position, we cannot conclude there was substantial evidence to support a finding of a job offer made to Claimant. Accordingly, we reverse the WCJ's Decision to the extent it granted the Suspension Petition based upon a job offer shredding paper.

17

*B.* *Whether there is substantial evidence to support the WCJ's Decision denying the Review Petition.*

Next, Claimant challenges the denial of his Review Petition on the ground there was not substantial evidence to support the WCJ's Decision. A claimant may seek to amend the description of an injury in a notice of compensation payable by filing a review petition and by meeting his burden of proving that he suffered additional injuries "as a result of the work-related . . . injury for which [the] employer accepted liability." *Commercial Credit Claims v. Workmen's Comp. Appeal Bd. (Lancaster)*, 728 A.2d 902, 906 (Pa. 1999). This burden is the same as if the claimant had filed an original claim petition. *Westinghouse Elec. Corp./CBS v. Workers' Comp. Appeal Bd. (Korach)*, 883 A.2d 579, 592 (Pa. 2005). Accordingly, where the causal connection between the injury and employment is not obvious, the claimant must present credible, unequivocal medical evidence establishing causation. *Gribble v. Workers' Comp. Appeal Bd. (Cambria Cty. Ass'n for the Blind)*, 692 A.2d 1160, 1163 (Pa. Cmwlth. 1997).

Claimant sought to amend the accepted injury, a lower back strain, to include "aggravation of lumbar stenosis, aggravation of lumbar degenerative disc disease and lumbar radiculopathy." (R.R. at 8a.) He introduced the testimony of Dr. Nguyen to support the Review Petition. Dr. Nguyen testified that Claimant suffered from lumbar radiculopathy and aggravated his preexisting degenerative disc disease and lumbar stenosis of his lower back, both of which Dr. Nguyen attributed to Claimant's work injury. (*Id.* at 189a-90a.) The WCJ, however, did not credit Dr. Nguyen's testimony in this regard. (FOF ¶ 28.) It is well settled that a WCJ is "the ultimate fact finder in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Williams v. Workers'*

18

*Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004). "[A]s fact finder, the WCJ is not required to accept even uncontradicted testimony." *Id.* at 144 (citing *Capasso v. Workers' Comp. Appeal Bd. (RACS Assocs., Inc.)*, 851 A.2d 997, 1002 (Pa. Cmwlth. 2004)). Because the WCJ did not credit Claimant's expert, Claimant did not satisfy his burden with relation to the Review Petition. *Commercial Credit Claims*, 728 A.2d at 906.

To the extent the WCJ's Decision to discredit Dr. Nguyen was based upon finding Employer's expert, Dr. Leatherwood, credible, we must address Claimant's argument that Dr. Leatherwood's testimony was insufficient because he did not review a 2018 EMG. Because of this, Claimant argues the WCJ's Decision is not well reasoned.

Generally, an "expert's opinion is not rendered incompetent unless it is" based **solely** on false or inaccurate information. *Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.)*, 962 A.2d 14, 16 (Pa. Cmwlth. 2008) (citing *Newcomer v. Workmen's Comp. Appeal Bd. (Ward Trucking Corp.)*, 692 A.2d 1062 (Pa. 1997)). "The opinion of a medical expert must be viewed **as a whole**, and even inaccurate information will not render the opinion incompetent unless it is dependent on those inaccuracies." *Id.* (emphasis added) (citing *Deitrich v. Workmen's Comp. Appeal Bd. (Shamokin Cycle Shop)*, 584 A.2d 372 (Pa. Cmwlth. 1990)). "Where an expert's opinion is based on an assumption that is contrary to the established facts of record, that opinion is [incompetent]." *Taylor v. Workers' Comp. Appeal Bd. (Servistar Corp.)*, 883 A.2d 710, 713 (Pa. Cmwlth. 2005).

Furthermore, Section 422(a) of the Workers' Compensation Act (Act), speaks to reasoned decisions and provides, in relevant part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon

19

the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834. What constitutes an adequate explanation for rejecting evidence in favor of other evidence depends upon whether the testimony was live versus via deposition. *Lewis v. Workers' Comp. Appeal Bd. (Disposable Prods.)*, 853 A.2d 424, 428 (Pa. Cmwlth. 2004) (citing *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043 (Pa. 2003)). Where, as here, the testimony was provided via deposition, a WCJ must articulate an "objective basis" for the credibility determination. *Daniels*, 828 A.2d at 1053. However, the reasoned decision requirement does not allow a party to challenge or second-guess a WCJ's credibility determinations, because "determining the credibility of witnesses remains the quintessential function of the WCJ as the finder of fact." *Reed v. Workers' Comp. Appeal Bd. (Allied Signal, Inc.)*, 114 A.3d 464, 470 (Pa. Cmwlth. 2015).

Claimant takes issue with the WCJ's Decision crediting Dr. Leatherwood's testimony. Specifically, Claimant challenges the reliance of the WCJ on Dr. Leatherwood's testimony on the basis that Dr. Leatherwood did not review a 2018 EMG, which showed radiculopathy. That Dr. Leatherwood did not review the EMG does not render his opinion incompetent. Such evidence goes to the weight afforded his testimony, which, like credibility, is within the discretion of the WCJ. *Williams*,

20

862 A.2d at 143.  Moreover, the WCJ adequately explained the reasons behind the credibility determinations.  (FOF ¶¶ 28-29.)  Thus, we discern no error.

In addition, Claimant challenges the WCJ's finding that the post-injury MRI was somewhat better than the preinjury MRI.  Dr. Nguyen's testimony supports this finding.[8]  On cross-examination, Dr. Nguyen testified that the 2017 MRI report was better than the earlier MRI.  (R.R. at 194a.)  Thus, this finding is supported by substantial evidence.

Because Claimant's challenge of the WCJ's denial of the Review Petition is based upon credibility findings and the weight afforded the evidence, we discern no error.

## IV.    CONCLUSION

In summary, the WCJ erred in finding Employer offered Claimant a position shredding paper as there is not substantial evidence to support this finding.  Accordingly, we reverse the Board's Order affirming the WCJ's Decision, which granted the Suspension Petition.  However, we affirm the Board's Order affirming the WCJ's Decision in denying the Review Petition.

**RENÉE COHN JUBELIRER,** Judge

---

[8] In his brief, Claimant argues Dr. Leatherwood's testimony does not support this finding because he testified that the MRIs showed no difference.  (Claimant's Br. at 18.)  However, this finding is in Finding of Fact 28, which relates to Dr. Nguyen's testimony, not Dr. Leatherwood's.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Sealey, : 
              Petitioner : 
  : 
       v. :   No. 1524 C.D. 2019
  : 
Workers' Compensation Appeal Board : 
(Elwyn Inc.), : 
           Respondent : 

## O R D E R

**NOW**, September 29, 2020, the Order of the Workers' Compensation Appeal Board dated October 2, 2019, is **AFFIRMED IN PART** and **REVERSED IN PART**. The Order is **AFFIRMED** as it relates to the denial of the Review Petition filed by Claimant Charles Sealey. The Order is **REVERSED** to the extent it granted the Suspension Petition filed by Employer Elwyn Inc.

                    _____
                    **RENÉE COHN JUBELIRER,** Judge

Charles Sealey, : 
                      Petitioner :
                                  :
           v.                     :
                                  :
Workers' Compensation Appeal      :
Board (Elwyn Inc.),               :   No. 1524 C.D. 2019
                      Respondent  :   Submitted: March 13, 2020


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

CONCURRING/DISSENTING OPINION
BY JUDGE COVEY                               FILED:  September 29, 2020


I agree with the Majority's affirmance of the Workers' Compensation Appeal Board's (Board) October 2, 2019 order affirming the Workers' Compensation Judge's (WCJ) decision denying Charles Sealey's (Claimant) Review Petition. However, I respectfully dissent from the Majority's conclusion that "there is not substantial evidence to support the offer of a job within Claimant's restrictions to Claimant." *Sealey v. Workers' Comp. Appeal Bd. (Elwyn Inc.)* (Pa. Cmwlth. No. 1524 C.D. 2019, filed September 29, 2020, slip op. at 2.  Because Elwyn Inc.'s (Employer) Director of Risk Management Marie Johnson (Johnson) testified that a position within Claimant's restrictions was available, i.e., the paper shredder position, I would affirm the Board's order affirming the WCJ's decision granting Employer's Suspension Petition.

The law is well established that "an employer can offer evidence of an available position within a claimant's restrictions within the context of a claim

petition proceeding[.]" *Hill v. Workers' Comp. Appeal Bd. (Ballard, Spahr, Andrews & Ingersoll)*, 824 A.2d 358, 362 (Pa. Cmwlth. 2003). In doing so, "[an e]mployer must at least provide the [c]laimant or his counsel a general job classification along with a basic description to give [] [c]laimant something to go on." *Four-Way Constr. Co. v. Workmen's Comp. Appeal Bd. (Snyder)*, 536 A.2d 873, 874-75 (Pa. Cmwlth. 1988). However, "[b]ecause [] [C]laimant had performed the very job[] offered to him by [] [E]mployer, *Four-Way* is distinguishable." *Braun Baking Co. v. Workers' Comp. Appeal Bd. (Stevens)*, 583 A.2d 860, 863 (Pa. Cmwlth. 1990). "[W]here the employer is offering claimant a light[-]duty position in which []he has previously worked, no job position or duties must be specified." *Eidem v. Workers' Comp. Appeal Bd. (Gnaden–Huetten Mem'l Hosp.)*, 746 A.2d 101, 105 (Pa. 2000). "[T]he referral should be reviewed in a common sense manner in order to determine whether a suitable position has been made available to the claimant." *Id.* at 104.

Here, Johnson testified:

Q. Did [] [C]laimant work a light[-]duty job at all here at [Employer] at any time after his May 22, 2017 injury?

A. Yes.

Q. What was the light[-]duty job that he worked here at [Employer]?

A. He was doing clerical support in the Risk Management Department.

Q. For what period of time did he do that?

A. I think he did it for three different -- one day at a time. He worked one day.

Q. My records reflect that he worked on June 6 and then again on June 12, 2017.

A. Yes.

Q. What are the physical demands and tasks that he did in that light[-]duty job in the Risk Management Department?

A. **His job was just to shred paper**. We had a backup of documents that needed to be shredded. And I clearly remember it because where he was sitting was across from my office and **we told him he could bring his back support and all he had to do was sit there and feed papers into the shredder. He could do it with his right hand, left hand, he could sit, he could stand and he could take breaks**.

Q. **Whose choice was it that he worked only one day and not more**?

A. **That was his. I have the work available**.

Q. **Is the work still available**?

A. **Yes**.

. . . .

Q. The job in the Risk Management Department shredding papers, could that be done sitting or standing?

A. Yes.

Q. Does the person have to lift anything more than a sheet of paper at a time?

A. No.

Reproduced Record (R.R.) at 150-152 (emphasis added).

Reviewing this testimony "in a common sense manner in order to determine whether a suitable position ha[d] been made available to [] [C]laimant[,]" *Eidem*, 746 A.2d at 104, supports the conclusion that Johnson's testimony was substantial "evidence of an available position within [] [C]laimant's restrictions[.]" *Hill*, 824 A.2d at 362.

The Majority maintains that because Johnson did not mention the paper shredder job during cross-examination or in the requested follow-up letter, that the

paper shredder job was not offered to Claimant. However, during Johnson's deposition, Claimant's Counsel specifically restricted the contents of the cross-examination and the requested follow-up letter to the training instructor and production coordinator jobs.

In response to Employer's request to have Claimant's Counsel "communicate the availability of these positions" to Claimant, R.R. at 145, Claimant's Counsel expressly stated:

> [B]ecause I have never received a letter, nor has my client concerning the jobs. [sic] I don't have a job description. I would be happy to show him the transcript but I think the best way to handle it is if [Employer] actually wants to offer these jobs to [] [C]laimant to send a formal letter like they [sic] have in the past with a copy of a job description. That way [Claimant] can review it as can his doctor [sic] I think is really the best way to handle it is because it would be hard for me just by taking notes over the phone to try to communicate these to him.

R.R. at 145. Claimant's Counsel made the letter request before Johnson's testimony concerning the paper shredder position, and thus, his request was clearly referring to the training instructor and production coordinator jobs.

Further, Claimant's Counsel's first question to Johnson on cross-examination again restricted the examination to the training instructor and production coordinator jobs. Particularly, cross-examination began: "I do have a few questions for you on cross[-]examination. And unfortunately, **I'm going to have to spend most of my time about jobs that you discussed for the first time today**, okay? A. Okay." R.R. at 154 (emphasis added). Claimant's Counsel concluded his questioning regarding the training instructor and production coordinator jobs: "Q. Now I feel like I have enough information based on what I have looked at to communicate these offers directly to [Claimant]. **Was** [sic] **there any other jobs**

**that you wanted to offer [Claimant] for the first time today**?  A. No, not at this time.” R.R. at 164 (emphasis added).

Accordingly, for all of the above-stated reasons, the Dissent would affirm the Board’s order affirming the WCJ’s granting of Employer’s Suspension Petition.

                                       _____
                                       ANNE E. COVEY, Judge